Filed 9/8/15  P. v. Garza CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL RENE GARZA,<br><br>    Defendant and Appellant. | F068553<br><br>(Kern Super. Ct. No. SF017107A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

John F. Schuck, under appointment by the Court of Appeal, Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Detjen, Acting P.J., Peña, J. and Smith, J.

## INTRODUCTION

Appellant/defendant Michael Rene Garza pleaded no contest to assault with a deadly weapon and criminal threats pursuant to a negotiated disposition, and was sentenced to the second strike term of 19 years in prison. On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Defendant has filed a letter brief and challenges the superior court's denial of his motion to exclude his pretrial statements. We affirm.

## FACTS[1]

Around 9:30 p.m. on March 19, 2013, Deputy James Jackson of the Kern County Sheriff's Department responded to Town & County Liquor Store on Highway 46 in Wasco. Jackson spoke to William D. (William), who was in his 60's. William reported that he had been assaulted with a knife by a Hispanic male in his 40's, who had numerous tattoos and was wearing a Raiders jacket.

William told Deputy Jackson the incident occurred when he was inside the liquor store. Defendant was also inside the store. Defendant asked William what he was looking at, and William replied that he would look at whatever he wanted to. Defendant told William that he was an "O.G. Sureno gangster," and slapped William three times with an open hand. Defendant told William to leave. Defendant pulled a knife, advanced toward William, and threatened to kill him. Defendant made slashing motions with the knife toward William, and William was afraid for his life. William retreated into the back of the store. Defendant threatened to cut William's throat, kept referring to himself as "a Sureno gangster," and continued to advance toward him with the knife.

---

[1] The following facts are from the preliminary hearing and the hearing to exclude defendant's pretrial statements.

William told Deputy Jackson that he was able to leave the store, and he headed toward his car. Defendant followed William out of the store, chased him around the car, and kept threatening to kill him. Defendant tried to slash the tires on William's car. William's wife, who had been sitting in the car, also saw defendant with the knife. William said defendant ran across the street to the Wasco Inn.

Deputy Jackson went to the Wasco Inn and asked the staff if they had seen a man wearing a Raiders jacket who had tattoos. Jackson was advised that defendant was staying in room No. 231.

Deputy Jackson testified he went to the motel's second floor where room No. 231 was located. Defendant walked out to the exterior hallway. His girlfriend was present. Defendant was in his 40's, had tattoos, and was wearing a black tank top and sunglasses which said "Raiders." He was not wearing a Raiders jacket. Defendant's left hand was wrapped in a bloody towel, and he had a fresh laceration on his hand.

Deputy Jackson testified he did not arrest defendant or place him in handcuffs. He did not consider defendant to be in custody. They stayed outside defendant's room. He did not advised defendant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

Deputy Jackson asked defendant what happened to his hand. Defendant replied that he got cut. Jackson asked defendant if he had any weapons on him, and defendant said no. Jackson asked defendant if he could search him for weapons, and defendant said yes. Jackson searched defendant for less than a minute and found an empty knife sheath on his hip.

Deputy Jackson asked defendant to sit down on the steps, and he sat on the top step of the stairwell. Jackson asked defendant if he had been in an altercation at Town & Country Liquor. Defendant said "some guy disrespected him." Jackson asked if he wanted to tell his side of the story. Defendant replied he was not "dropping dimes on anybody." Defendant said he was "an OG Sureno and he [was] not telling the cops

3.

anything." Defendant raised his tank top and gestured across his stomach to a tattoo that said "Sureno." Defendant said, "See, 'Sureno, G.' " Defendant said he "beat a 26-to-life case before and that anything else he had to say was between him and the judge."

Deputy Dickey, who arrived as a backup officer, asked defendant for permission to search his room and defendant agreed. A Raiders jacket and a knife were found in his room. The knife blade was covered in blood.

Deputy Jackson testified that, at this point, he decided to detain and arrest defendant. Jackson did not advise defendant of the *Miranda* warnings since defendant said he did not want to say anything to him. Jackson did not threaten defendant or display his service weapon at any time.

After defendant was arrested, William and his wife drove to the motel and looked at defendant, who was standing about 25 yards away in a well-lit area. They both identified defendant as the man with the knife.

Deputy Jackson transported defendant to the hospital for treatment of the wound. Jackson waited with defendant for several hours so he could receive treatment. Defendant was in handcuffs. While they waited, Jackson testified they talked about defendant's life, his girlfriend, and his work experience. Jackson did not ask him any questions about the incident at the liquor store. During the conversation, defendant spontaneously said "the victims wouldn't testify in this case because they would be too scared to and he would beat this case." Defendant again said he had already beat a 26-to-life case and he had two strikes.

At the preliminary hearing, Deputy Tanner Miller, a gang expert, testified about defendant's previous contacts with law enforcement from 2002 to 2012, when he claimed affiliation with the "Wasco 13" Sureño gang. The liquor store was in the territory of the "Varrio Wasco 13" Sureño gang. The phrase "O.G." referred to an older gangster.

4.

**Procedural History**

On July 17, 2013, an amended information was filed, which charged defendant with count I, assault with a deadly weapon, a knife (Pen. Code, § 245, subd. (a)(1));[2] and count II, criminal threats (§ 422), with an enhancement for personal use of a deadly or dangerous weapon, a knife (§ 12022, subd. (b)(1)). It was further alleged he committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and he had two prior serious felony enhancements (§ 667, subd. (a)) and two prior strike convictions (§ 1170.12).

**Hearing on Defendant's Pretrial Statements**

On November 4, 2013, defendant's trial was scheduled to begin. The court conducted a hearing pursuant to Evidence Code section 402 on the admissibility of defendant's pretrial statements, and whether the *Miranda* advisements should have been given. Deputy Jackson was the only witness and testified as set forth above. The court held defendant's statements were admissible and found he was not in custody when he was questioned at the motel. The court further found that defendant's statements at the hospital were voluntary and spontaneous; he was not interrogated by the deputy at the hospital; and the *Miranda* warnings were not required.

**Plea and Sentence**

After the court denied defendant's motion to exclude his pretrial statements, he entered into a negotiated disposition on November 5, 2013. He pleaded no contest to counts I and II, admitted the gang enhancement, and admitted the prior conviction allegations, for an indicated sentence of 19 years and that the court would consider dismissing the prior strike convictions.

On December 6, 2013, the court heard and denied defendant's motions to discharge his appointed counsel and withdraw his plea. The court dismissed one prior

---

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

strike conviction and sentenced him to the second strike term of 19 years in prison: as to count I, the lower term of two years, doubled to four years; a consecutive term of five years for the gang enhancement; and two consecutive terms of five years for the prior serious felony enhancements. The court imposed concurrent terms for the rest of the charges.

On December 9, 2013, and January 6, 2014, defendant filed notices of appeal. His request for a certificate of probable cause was denied.

## **DISCUSSION**

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on May 15, 2014, we invited defendant to submit additional briefing.

Defendant has submitted a letter brief asserting that his pretrial statements should have been excluded because he was unlawfully detained, placed in handcuffs and questioned at the motel, and he should have been advised of the *Miranda* warnings. He has submitted a copy of a photograph showing that he was in handcuffs while a bloody towel was still wrapped around his hand. He relies on the photograph to argue that he was placed in handcuffs while he was questioned at the motel. Defendant also claims he was not in the right state of mind when he was questioned because of excessive alcohol consumption.

We briefly review and reject these contentions. "[A]dvisement of *Miranda* rights is only required when a person is subjected to custodial interrogation. [Citation.] Custodial interrogation has two components. First, it requires that the person being questioned be in custody.… The second component of custodial interrogation is obviously interrogation…." (*People v. Mosley* (1999) 73 Cal.App.4th 1081, 1088–1089.) "Absent 'custodial interrogation,' *Miranda* simply does not come into play. [Citations.]" (*People v. Mickey* (1991) 54 Cal.3d 612, 648.) "In reviewing *Miranda* issues on appeal,

6.

we accept the trial court's resolution of disputed facts and inferences as well as its evaluations of credibility if substantially supported, but independently determine from undisputed facts and facts found by the trial court whether the challenged statement was legally obtained. [Citations.]" (*People v. Smith* (2007) 40 Cal.4th 483, 502.)

As for his statements at the motel, defendant was not in custody when Deputy Jackson briefly questioned him outside his room. "[T]he term 'custody' generally does not include 'a temporary detention for investigation' where an officer detains a person to ask a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. [Citation.]" (*People v. Farnam* (2002) 28 Cal.4th 107, 180.) An investigatory detention allows "the officer [to] ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions…." (*Berkemer v. McCarty* (1984) 468 U.S. 420, 439.) Deputy Jackson, the only witness at the hearing, testified that when he spoke to defendant at the motel, he did not place defendant in handcuffs, and he was not under arrest. Jackson asked defendant a few questions as part of his investigation about what happened at the liquor store. The exchange was very brief and limited, and defendant was not in custody. After the jacket and knife were found in the motel room, defendant was arrested and he was not questioned further.

While defendant was in custody and under arrest at the hospital, he was not subject to interrogation. Deputy Jackson testified that defendant volunteered several statements about his life in general while they waited for medical treatment. Jackson did not ask defendant any questions about the incident at the liquor store. Defendant spontaneously made additional statements about the liquor store incident. "[V]olunteered statements not the product of interrogation are admissible." (*People v. Edwards* (1991) 54 Cal.3d 787, 815.) A police officer is not obligated to prevent a suspect from volunteering incriminating statements. (*Id.* at p. 816.) Neither spontaneous nor volunteered statements are the products of interrogation and are not barred by the Fifth

7.

Amendment or subject to the requirements of *Miranda.* (*Miranda, supra,* 384 U.S. at p. 478; *Rhode Island v. Innis* (1980) 446 U.S. 291, 299–300; *People v. Ray* (1996) 13 Cal.4th 313, 337.)

Finally, there was no evidence in the record that defendant was intoxicated or under the influence of alcohol when he was questioned at the motel or made the statements at the hospital.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **<u>DISPOSITION</u>**

The judgment is affirmed.